Campos v. United States of America In 1974, Congress enacted a careful waiver of federal sovereign immunity for a limited number of intentional torts committed by law enforcement officers. This provision, known as law enforcement proviso, affords individuals the right to sue for intentional wrongful acts, such as the false arrest in this case. Ms. Chides Campos had and showed proof of lawful status, but she was arrested and deported by federal officers. This amounted to false arrests for which Congress intended to waive immunity. The District Court, yes, Your Honor. I guess the important question on what you just said is, did she show proof of lawful status? A work — an EAD is not proof of lawful status. So there's this whole stream through the case that that's enough and that that's proof. And so can you help me there? Yes, Your Honor. An EAD certainly is proof of lawful status. What statute or regulation says an EAD operates as proof of lawful status as opposed to proof of workplace eligibility? Yes, Your Honor. The most direct site is 8 CFR section 264.1b, and that specifically establishes the EAD as evidence of lawful registration. What — how so? That regulation provides — Go ahead. — provides a list of documents that establish proof of lawful presence. And under that list of about 15 or 20 documents is the EAD, which on that list is described as, I believe, Form I-766. And that form is the EAD card, which functions similar to a green card that an immigrant would carry in their wallet. It has a picture of the immigrant on it and a fingerprint, and it has holographic security measures. But we have other — But it doesn't have the same status as a green card, does it? It is a slightly different status. They both are similar in that they provide lawful status. But if this had been a green card, this never would have happened. Well, Your Honor — Your Honor, we're — I got this work authorization card, and it didn't pop out on the computer. And — Well, it should have had the same effect as any other proof of lawful status, such as a green card. When Ms. Chaitis-Campos showed the EAD, that alone resolved the issue and removed any discretion the officer may have had to arrest Ms. Chaitis-Campos. What statute or regulation says you cannot arrest someone who has an EAD? We have a number of cases that I was able to readily find where people are in illegal status and they are deportable or removable, I guess I should say, and they have valid EADs at the time they're removable. And we even ask them in oral arguments sometimes, this is sort of weird. And the person usually says, yeah, it's kind of weird in immigration sometimes, things get crossed out. Well, in this case, we don't have any of those circumstances that you might find in other cases. We have a valid EAD, which is the most recently issued evidence of status. Right. And this — the validity was not questioned. And as — by operation of law — Well, what case says that you cannot remove someone with a valid EAD? What case says it's a violation of a statute, which is what you have to show for the — that they've violated statutory law, intentionally violated statute for your FTCA claim? That's separate and apart from discretionary function. It's just a state your claim. What statute have they violated? Well, they've — they've violated the Texas — the Texas tort for false arrest. Because the officer arrested Ms. Chayes-Campos without any authorization. This — Well, he has authorization if he reasonably believes someone — he has statutory authorization if he reasonably believes. So what says you know you do not have statutory authorization anymore if someone gives you an EAD? That EAD says, oh, you no longer have statutory authorization. Yes, Your Honor. Your Honor, federal law — federal immigration statutes and the regulations, they specify the legal — the legal imports of U visa status. And they specify that the EAD is proof of this status. They specify that an individual who has U visa status and shows their valid proof of this status is lawfully present and is not subject to any discretion by anybody for removal. This is a simple case where the officer simply ignored the EAD when he had no discretion to do so, and he had no authority to enact an arrest. I guess I'm still asking for what is the authority that says he has no discretion once someone gives — that the EAD is a — you know, I don't want to say get out of jail car because that's not — I'm not trying to make light of this. But that it's somehow — everything stops and you — and the officer loses his discretion under what statute or even regulation says that. Yes, Your Honor. And I'll refer you to our briefing. But very briefly, there are several statutes, and I'll run through them. First is 8 U.S.C. 1101A15U, which establishes U visa status as a lawful status. Second is 8 U.S.C. 1184P3B, which states that DHS shall provide the U visa nonimmigrant with employment authorization during the period of this lawful temporary residence. Furthermore, 8 CFR 214.14C7 establishes that the U visa holder is authorized — has employment authorization during the period of her — Right. You have employment authorization, but what says that the — it's similar to the question Judge — I mean, Judge Weiner asked, excuse me. What says that the U — that the EAD is proof of the U visa automatically, that that — that they're — that they're fungible in that way? Yes. The presentation of one is the same when we know that there are EADs all over the place. Well, yes, Your Honor. I refer you back to that first regulation that I gave you, which is directly on point and establishes status. And second, the work authorization regulations further establish that — that U visa holders have employment authorization pursuant to their lawful status. And that further regulation is 8 CFR section 274A.12, subsection A, subsection 19. Right. You're just telling us that you get the worker authorization because you have the other thing. That's one of the ways you can get an EAD. Oh, and furthermore, the regulations specify that the EAD itself is proof of lawful status. So the immigrant is entitled to the employment authorization, and the authorization shows the lawful entitlement through the U visa status. So you can prove that it's proof of lawful status. I don't believe the regulation says that, that to law enforcement trying to deport you or to — at the border, that you can just show your EAD and you don't have to show anything else. Are you telling me that that regulation says that? Yes, Your Honor. The regulation clearly specifies that EAD is proof of lawful status. And an individual who presents to you — Let me make sure what regulation you're talking about. Are you talking about the very first one that you mentioned in response to — give me the number again to make sure I know what you say is the critical regulation. It is 8 CFR section 264.1b. Okay. So that's the one you're talking about. And it's magic language. You said there are 15 or 20 different examples of documentation. That's the regulation that has that, and one of them is an EAD or the form number that's the equivalent of the EAD? That's correct, Your Honor. All right. And furthermore, the Fourth Amendment itself provides that an arrest cannot be made without proof of probable cause. Now, you've waived your Fourth Amendment claim, though, haven't you? No, we haven't, Your Honor. The district court determined that it was waived, didn't it? The district court did, and that is the error that the district court made. The reason we haven't waived the Fourth Amendment argument is that we have an FTCA claim, which has to be premised on state law. In our case, our claim is premised on a false arrest, a false imprisonment, which requires as an element that the arrest be made without authorization. The officer didn't have authorization pursuant to the statutes, and because there is no probable cause to fit within the Fourth Amendment context. Have you briefed with us that the district court erred in its waiver determination? Have you briefed that in your opening brief? Yes, Your Honor, we did. Where is that? Or maybe you could tell me on rebuttal. Oh, I'll do that on rebuttal, Your Honor. It's important to recognize that for an FTCA claim, these claims must be premised on state law, and they cannot be premised directly on a constitutional violation. So requiring us to have made a constitutional violation would take us outside of the framework of the FTCA in the first place. And so instead, we've alleged this as an intentional tort under Texas law, false arrest, and false imprisonment.  We don't look directly to the law enforcement proviso, and we don't look to the discretionary function exception. And that is what Congress intended. We should not even be considering the discretionary function in this case. We've alleged an intentional tort within the law enforcement proviso. If the discretionary function, if we consider that, do you lose? No, Your Honor, we don't. And that's we stress that the court should not even consider the discretionary function exception. But if we do reach this, if we do reach the discretionary function, the officer's actions did not fall within that exception because the officer had no discretion to act as he did. Very specific statutes and regulations and the Fourth Amendment prohibit him from making this arrest when there was absolutely no probable cause and there was absolutely no indication that our individual, Ms. Chattis-Campos, was here unlawfully. The officer simply ignored her lawful status. And it's to have a they have a roving right as long as they reasonably believe, don't they? They don't have to have a warrant with probable cause and that sort of thing. Isn't that right? No, Your Honor, not in this case. But normally one of these agents does not have to have probable cause. I mean, does not have to have a warrant or anything set up by probable cause. They just have to have a reasonable belief. Well, Your Honor, the officer can't ignore the Federal law and regulations that provide for Ms. Chattis' lawful presence in this country. He has no right to disregard those regulations. Well, what he knows is that she's been convicted of illegal reentry, right? He knows that at the time that she shows up. Yes, Your Honor. And he knows that she has an EAD card. That's what he knows. Yes, Your Honor. And he also knows that it's a valid EAD card. And he knows that by operation of Federal law, U visa status, as evidenced by this card, cancels any prior orders of removal. He could not have given effect based on very specific law and regulation that takes away any discretion he has to give effect to this order of removal. What do you do with our case and when? Yes, Your Honor. It's a very similar situation, isn't it? Well, Wynne is a much different case for two reasons. First, Wynne is unpublished and is not precedent in this circuit. But, two, Wynne considered essentially allegations of negligence, where the plaintiff in Wynne alleged that the law enforcement officers didn't conduct the correct search and determine his citizenship status that even the plaintiff in Wynne wasn't alleging. Here, we're not alleging a negligence claim. We're alleging a direct tort claim, a tort, false arrest, and false imprisonment. There was once Ms. Campos presented her EAD and the officer disregarded it, that was a wrongful act within this framework of an intentional tort. And that would put the framework back within the law enforcement proviso. Why is that? I guess I'm still stuck on that. We have a number of cases where people with valid EADs are subject to arrest and are arrested because they're out of compliance for whatever reason with their actual status, even though they have EADs. Well, we know in the DAPA case, for example, hundreds of thousands of EADs were issued prematurely to people who were not in lawful presence. So those were on the street for two or three years. Well, those simply aren't the facts of this case. We don't have any question about the validity of the status. The officer just simply chose to ignore it. Why don't we have a question about the validity of the status? Because I thought he couldn't find it in the computer. Because Ms. Chayde's compost presented her EAD, and that EAD was the most recently issued document, and it canceled anything that he had found in that computer. It canceled the order of removability that he may have found. There was no indication in this case at all that the EAD was invalid. The officer just simply chose not to give effect to that. And this is directly a – this directly falls under the law enforcement proviso. It is a type of claim that Congress intended to waive immunity for, for these seizures without authority or without probable cause, just like you would see in the Collins v. Illinois raids that underlie – that was the basis for that law enforcement proviso being enacted. I see that I'm out of time, Your Honor. I will say my response for rebuttal. Thank you. May it please the Court. Jerry Sinsdag, appearing on behalf of the United States. Plaintiffs' FTCA claims are barred by the discretionary function exception. And just to dive right in, I think the key question here is whether any statute, regulation, or policy expressly required or specifically directed the officers to accept the EAD as proof of lawful status, as definitive proof. And there are no such statutes, regulations. What about the regulation that he pointed out to us and mentioned several times, 264, some subpoint? And I think it had a list in that regulation of documents that are considered registration forms.  How should we interpret that regulation? Your Honor, to be honest, I have not briefed that issue. I don't think it was written. I don't think it was cited in the briefs. So I think what would be key, and so I can't speak. I'd be happy to talk about it later specifically to that regulation. But, you know, I would wager that it does not say that law enforcement officers, when presented with an EAD, There's no such thing. must accept it as proof. And I think, as Your Honor pointed out, it is possible for an individual to have an EAD but not be in lawful status because the EAD was issued and the status was revoked. What about on the computer that it's – apparently, the facts are that the date on the EAD was later than anything found on the computer. What do you make of that? As far as it trumping, if I may use that word, anything of a contrary nature in the computer? Your Honor, I guess the way I would put it is officers have discretion to investigate a person's status. And the discretionary function applies to that investigation. Now, we can assume for purposes of this appeal that the investigation was negligent or even an abuse of discretion, but that does not take it beyond – and we don't concede that – but that does not take it beyond the discretionary function exception. So I think Your Honor's question is saying, well, should they have gone further? Should they, given that it had a later date, should they have maybe looked into the issue more? Would a more cautious officer have done more? That's not the standard? That is not the standard, Your Honor. Even a negligent officer, an officer who abuses his or her discretion, that does not mean the discretionary function exception does not apply. And what is required is a statute saying you must act in a particular way when presented with a piece of evidence. And here I would also emphasize that there was ample evidence in the record that the plaintiff was here unlawfully. She had a – she was subject to a notice of removal, an expedited removal that was less than a year old. She had been – and that was issued because she had misrepresented that she was a U.S. citizen when she attempted to enter a year earlier. And he had all that information before? He had. The officer had all of it. So he knew she's misrepresented in the past her citizenship or lawfulness to be in the country and that she's actually been convicted of that. And then subsequently pled guilty to being – And so when he – she shows some form, it's not unreasonable to be suspicious of that, especially if you can't verify it on the computer. Your Honor, we would agree with those points, yes, that, you know. Those could have been friendly questions. Yeah, exactly. We don't dispute that at all. So yes, you know, we believe the officers had reasonable belief – reason to believe that she was here unlawfully. But that's even not the inquiry because even if they, again, acted negligently or abused their discretion, it would still be covered. But we certainly believe they had ample, under the circumstances, ample reason to believe she was here unlawfully. Well, you refer to the discretionary function for good reason, obviously, several times. There is the law enforcement proviso. Do you think Sutton is good law still? Sutton? Yes, Your Honor. At the Moore Circuit? Despite Millbrook, for example? Your Honor, our view is that, yeah, it has not been overruled and that it's clear that under this Court's case law that – Well, what Sutton says is when you have these two or whatever they may be, but here the law enforcement proviso and discretionary function, that you should examine the nature and quality – well, you should examine, yeah, the nature and quality of the agent's conduct against the congressional intent underlying the separate provisos. There's some evidence that the law enforcement proviso was in reaction to Bivens and to Collinsville or whatever the other case is, which were very egregious, almost criminal conduct. Not necessarily so, but quite egregious conduct. Are you saying that the law enforcement proviso doesn't apply unless it's that level of misconduct despite the Supreme Court's decision in Millbrook, which really seems to say you don't look at anything extraneous to the language of the law enforcement proviso is what bothers me of whether Sutton is still good law. Well, Your Honor, I think, you know, we do take the position that, you know, Sutton – well, let me put it this way. If nothing else, Sutton made clear that the discretionary function applies, you know, if the officers are merely negligent or if they are, you know, even if they abuse their discretion. So I think at a minimum it stands for that proposition that the normal investigation involving in a reasoned belief the person is here unlawfully will trigger in the mine run of cases the discretionary function exception. And I don't read Millbrook or Hillbrook as overruling that. They did overrule in Millbrook the Third Circuit's rule that tried to limit it and I forget which rule was which. One of the two circuits, 11th, 3rd, officers must be engaged in investigative or law enforcement activity or they must be executing a search, seizing evidence, or making an arrest, which are the specific references in the proviso. So the way I read Justice Thomas is he's saying this is a plain language of the proviso applies. And if that's where you are, then you don't qualify it by bad faith, for example, in our Nguyen opinion, or something else. Maybe. I'm asking for your opinion. Well, yeah. And I don't believe that the discretionary function exception, I mean, that by its plain terms also applies. And so there is a tension in, you know, the D.C. Circuit, for example, resolved that tension by saying, well, if the discretionary function applies, then that's where this... But we haven't done that. You haven't done that. We've done Sutton. Right. So if we're back to Sutton, then I think if nothing else, it stands for the proposition that, you know, where the discretionary, where a mine run investigation takes place or where, and I think we are kind of in the heartland of an investigation into someone's illegal status or lawful status, that the discretionary function exception applies in those circumstances. Well, doesn't Sutton say that neither predominates? Exactly, Your Honor. I think it... So you have to examine each case on its own facts. Right. And I think, though, that Sutton, the point it made was that, you know, in order for the law enforcement provisor to trump the discretionary function exception, you need a showing of conduct that, you know, exceeds at least the average ordinary or at least the reasonable exercise of discretion in an ordinary case that you don't get into. Yeah. We read Sutton as requiring something closer to bad faith or egregious conduct. I think this court said something absent extremely compelling circumstances. The discretionary function exception will apply to an investigation into lawful conduct. I think you kind of answered this already a little bit, but it's the federal government's position that Sutton is not at all in conflict with Millbrook and that Sutton is good law that we should feel comfortable relying on and that you're not gonna go to some other court someday and say that we got it wrong. I don't think you can commit to that. I don't think I can commit to that at this point. Well, I mean, you don't want to get us strung out on something if it's questionable. Your Honor, I mean, I... Is there some way to resolve this case from the government's position that doesn't have any questionable nature? The best way to resolve this is not in tension with any Supreme Court precedent. You know, a conclusion that the discretionary function exception applies here based on the officer's conduct and based on the discretion that is afforded. And this Court's recent decision in Solomon I think also reached the same conclusion that in those circumstances the discretionary function applies, and I don't believe that would be in conflict with any... Do you think Wynne is out of step? I don't believe so, but I, you know, obviously Wynne applied the bad faith. But it did it. It just said intentional act or bad faith, and then it said there was an intentional there was nothing here. It didn't have to have bad faith. That's correct. I mean, yeah. I think it said bad faith or a constitutional... It seems to me that Wynne is more unstable than perhaps other case law in light of Millbrook because it did add an extra factor that all the rest of what applies, but it must be bad faith. And the district judge here in this case relied on that, did he not? That is true, Your Honor. Well, so what if we say Nguyen was in... can no longer stand after Millbrook, which is not presidential anyway. Millbrook is presidential, but Nguyen is not. What should we do if we decide the wrong standard was applied? Your Honor, again, I guess, you know, there is undoubtedly a tension between the... No, just accept. So, you know, this Court... Two judges, at least on this Court, say that Nguyen is no longer good law and bad faith should not have been considered. So what do we do then? I think the... You know... I mean, does it need to be a do-over in the district court or can we make a new allocation of the case law and decide it here as the judge is still correct regardless of the bad faith in injecting that? Well, I think this Court would have to clarify what the standard would be in those circumstances, whether, you know, this Court was going to adopt the Eleventh Circuit's approach, for example, or whether... We're going to adopt Sutton. It's all law. We're just one little old circuit, one little panel. But I'm saying if we think at least the bad faith part of our current case law, which, again, is not a presidential holding, bad faith, that that's no longer sustainable, I'm just asking who should make the new call on this particular case? Right. Well, I think, Your Honor, as Your Honor pointed out earlier in Sutton, the Court said you look to the purpose of the exceptions. And I think looking to the purpose of the discretionary function exception is all Your Honors would need to do and say this case fits squarely within what Congress intended in passing the discretionary function exception and, therefore, conforms with Sutton's view that we look to the purpose and their purpose, you know. What would you say the purpose, either speaking for the Department or speaking for yourself, is the purpose of the law enforcement proviso? Again, I think... Is it to keep Bivens and Collinsville from happening, which means very egregious conduct or does it have a broader sweep than that? Your Honor, I think the purpose, as this Court pointed out in Sutton, was the kind of egregious conduct that was... There's a huge gap between improper conduct and law enforcement proviso. From... Well, I mean, let me be clear, I guess. One other thing that could happen. If law enforcement... If there was a statute  that required officers so that the discretionary function exception misses the D.C. Circuit's reasoning, it didn't apply for that reason because, you know, the officers violated a prescription that they were required to exend, then the law enforcement could apply to even, you know, ordinary conduct, I suppose, or then it might apply. And that was the D.C. Circuit's reasoning with how to... How to... How to meld those provisions. But I think where the discretionary function exception applies and where it's clear the conduct was intended, that was what Congress had in mind, then that's all this Court needs to look to to determine to resolve the case. Do we have to reach the question of the discretionary function if there's a tension? Could we alternatively hold that under 12b.6 there's no Your Honor, that wasn't an argument that we made. I think, you know, we... But, I suppose... Yes, Wynn says it says where there's no constitutional violation or conduct by effects. So, if there's no violation or violation of law alleged, then it doesn't state a claim. That's true, Your Honor. And then you don't even have to get into the interplay between the discretionary function and the... That's true, Your Honor. I mean, I know that, you know, that is true. We haven't... You didn't brief it like that. Didn't brief it like that. I don't think it has reached the stage below we didn't move to dismiss on those grounds. Although we moved on 12b.1 because of sovereign immunity is gone. But I, you know, I believe, you know, I certainly don't disagree that we'd have a strong case that it doesn't, that it fails to state a claim. Okay. What about the Fourth Amendment? Yes, Your Honor. Well, it's the government's position that in order for the Fourth Amendment, the Fourth Amendment would have to specifically prescribe conduct under these circumstances. We're talking about the same thing. Okay. I'm asking, does the Fourth Amendment waived? Did the district court determine it was waived and was that a correct determination? And also, did they brief that issue here on appeal? So, those are three questions. Yes, we believe the district court held that it was waived because it was only mentioned briefly in the response brief below. So, we rely on that finding. So, do you mean that was a correct determination or an incorrect determination? That it was correct, that it was not developed, that argument was not developed below. Do you believe that was argued here that that was an incorrect determination? Um, I believe that, you know, again, the plaintiff does mention that, it does challenge that determination by saying that they did, that it was enough to mention it below. I don't know that there's a more robust defense of that decision, but we believe that the mere determination was not enough to preserve that question. Thank you. Do you want to send further questions? We'll always take time back. Okay. May I please support? I just have three quick points to make. First, Ms. Chides' accomplice's EAD showed a UVISA status on the EAD because it stated the code A-19 which specifically indicates that she had UVISA status. So her EID was not among any other type of EID. It was specific to her lawful grant of UVISA status. And the officer had no discretion to reject this EAD. Second, the discretionary function exception does not even apply to this case. The better reasoning is that is to take the approach of Sutton, which describes that the law enforcement proviso and discretionary function exception can be in tension with one another. And there are occasions when the law enforcement proviso applies to the exclusion of the discretionary function exception. And this is just such a case here because Ms. Chaitis-Campos alleged an intentional tort within the meaning of that proviso. And the proviso purports to apply to all claims that fall under the proviso, all claims for false arrests and for false imprisonments. This is the more specific provision as compared to the discretionary function exception and is the more recently enacted. Second, it gives effect to Congress's intent. Kennedy. Well, but hadn't Sutton already said they're equal, we don't use later adopted and whatever else you want to  later under Sutton? Yes, Your Honor. We think the better  better better interpretation of the law enforcement proviso to give it the legislative intent is that once the legislative intent is established and when intentional tort such as we've alleged here falls within that proviso we don't look to discretionary function exception. What do you say the purpose of the law enforcement proviso is if we're looking at the purpose of each discretionary function in law enforcement? The law enforcement proviso its purpose is to provide a cause of action when a  alleged under that proviso and that is apparent in the legislative intent that is apparent in the legislative history that you've referred to earlier the Bivens type claims and Collinsville Illinois claims. In those claims law enforcement officers as Sutton recognized were performing discretionary functions and carrying out their law enforcement duties and if the discretionary function exception was to apply on top of the law enforcement proviso it would render that provisionality which is certainly not what Congress intended. And we have just such a claim here which is a simple false arrest claim that the officer acted without authority in making that arrest. It fits the elements of the Texas claim. Finally Your Honor I want to make the quick point that we didn't waive our Fourth Amendment claim. We didn't waive that claim. In our briefing in this court I refer the court to page 25 and 26 of our brief where we discussed the issue. I further want to clarify that even though in our complaint we did not use the magic words Fourth Amendment we never raised this issue in paragraph 33 of our complaint where we discussed the officer acted without authority including without probable cause. And if you look back to the Bivens case in the Supreme Court the Supreme Court recognized that that case in fact alleged a Fourth Amendment claim even though it didn't use the words Fourth Amendment it instead referred to wrongful actions done without probable cause just like we have here. When we said you had to refer to 1983 and not 1983     a wrongful action sir.  think your Honor I think this may be comparable I think so your Honor. Thank you. END END          END END END END END END END A 0 0 0 0 1 0